UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARCKINDAL JULES,

       Petitioner,

       v.

PHILIP RHONEY, in his official capacity
as Field Office Director in charge of
Buffalo Federal Detention Facility, et al.,[1]

       Respondents.

_____

**DECISION AND ORDER**

6:26-CV-6186-EAW

## BACKGROUND

*Pro se* petitioner Marckindal Jules ("Jules"), proceeding *pro se*, is a civil immigration detainee currently held at the Buffalo Federal Detention Facility. Jules claims that he is being detained in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), pending removal proceedings in violation of the United States Constitution. Jules seeks relief under 28 U.S.C. § 2241. (Dkt. 1).

---

[1]    Philip Rhoney is the Acting Field Office Director of the Buffalo Field Office and is substituted in place of Tammy Marich pursuant to Federal Rule of Civil Procedure 25(d). In addition, Todd Blanche is the Acting U.S. Attorney General and is substituted in place of Pamela Bondi, and Markwayne Mullin is the Secretary of the Department of Homeland Security and is substituted in place of Kristi Noem. The Clerk of Court is directed to update the docket to reflect these substitutions.

Jules, a native and citizen of Haiti, was admitted to the United States as a lawful permanent resident on February 24, 2004. (Dkt. 7-1 at ¶¶ 5, 6). Since his admission, he was charged with and convicted of a number of criminal offenses. (*See id.* at ¶¶ 7-22). The most significant criminal sentence imposed for Jules's convictions appears to have been two years' incarceration related to a 2017 arrest. (*Id.* at ¶ 21). After that conviction, removal proceedings were commenced on October 9, 2018. (*Id.* at ¶ 24). Many decisions have been issued by immigration judges and the Board of Immigration Appeals ("BIA") concerning Jules's removal proceedings (*id.* at ¶ 35, 38, 41, 42, 43, 50, 59, 62), and the Second Circuit Court of Appeals has even been involved, granting Jules's petition for review and remanding for further proceedings (*id.* at ¶ 68). The current status of those removal proceedings is back at the immigration judge level, after the Second Circuit's remand. (*Id.* at ¶¶ 71-82).

Jules was detained in ICE custody on March 28, 2019 (*id.* at ¶ 28), and despite two separate decisions by another district judge in this District granting him bond hearings (*id.* at ¶ 48, 56), Jules remained in ICE custody for over five years, until he was released by ICE on April 5, 2024 (*id.* at ¶ 69). But just over one year later, on June 16, 2025, Jules was detained when he reported for an ICE check-in and he has remained in ICE custody until the commencement of the present action. (*Id.* at ¶¶ 70, 83).

Jules filed his habeas petition on February 11, 2026. (Dkt. 1). On February 11, 2026, the Court entered a Text Order that directed Respondents to show cause on or before February 18, 2026, why the Court should not order Jules to receive a bond hearing in light of the Court's prior decisions in *Quituizaca Quituisaca v. Bondi, et al.*, No. 25-cv-6527,

2025 WL 3264440 (W.D.N.Y Nov. 24, 2025), *Lieogo v. Freden, et al.*, No. 6:25-CV-06615 EAW, 2025 WL 3290694 (W.D.N.Y. Nov. 26, 2025), *Ivonin v. Rhoney, et al.*, No. 6:25-CV-06673 EAW, 2026 WL 199283 (W.D.N.Y. Jan. 26, 2026), and *Ab-Rahim v. Marich*, No. 6:26-CV-06005-EAW, 2026 WL 279113, at *1 (W.D.N.Y. Feb. 3, 2026), and also temporarily enjoined the transfer of Jules outside this District (Dkt. 2).

On February 17, 2026, Respondents informed the Court that Jules's detention was distinguishable from matters addressed in the Court's identified decisions because Jules was detained pursuant to 8 U.S.C. § 1226(c) due to his criminal history. (Dkt. 3). As a result, on February 18, 2026, the Court issued a scheduling order directing Respondents to answer the petition within 20 days and giving Jules 14 days to reply. (Dkt. 4). On March 10, 2026, Respondents filed an answer to the petition (Dkt. 7), and on March 20, 2026, Jules filed a reply (Dkt. 9).

On April 6, 2026, the Court issued a Text Order granting the petition to the extent it seeks a bond hearing. (Dkt. 10). The immigration judge who heard Jules's bond hearing granted his release on $1,500 bond and certain other conditions. (Dkt. 12). This Court stated in its Text Order that a more detailed decision explaining the Court's reasoning would be issued in due course.[2] This is that decision.

---

[2]    In light of the unprecedented volume of immigration habeas petitions pending before this Court and in order to provide expeditious relief to petitioners, the Court at times proceeds by Text Order and then amplifies the basis for its reasoning by written decision later, as it has done here. On June 5, 2026, Respondents filed a notice of appeal of the April 6, 2026 Text Order. (Dkt. 15). Because the instant decision only amplifies the Court's reasoning for the Text Order, in the Court's view it is not impacted by the pending appeal. *See United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996) ("As a general matter, the filing of a notice of appeal is an event of jurisdictional significance—it confers

## DISCUSSION

"Section 1226 of title 8 authorizes the government to detain a noncitizen pending a decision on whether the alien is to be removed from the United States." *Black v. Decker*, 103 F.4th 133, 140 (2d Cir. 2024) (citation modified).  Jules is detained pursuant to § 1226(c), under which "noncitizens who have committed one of certain listed offenses or who have been identified by the government as involved in terrorist activities are subject to mandatory detention." *Id.* at 140-41.

In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court "held that detention under section 1226(c) without an *initial* bond determination does not, on its face, violate the detainee's due process rights where detention is 'for the limited period of . . . removal proceedings.'" *Black*, 103 F.4th at 141 (quoting *Demore*, 538 U.S. at 531).  But numerous courts—including this Court and the Court of Appeals for the Second Circuit—have found that "a noncitizen's right to due process precludes his unreasonably prolonged detention under section 1226(c) without a bond hearing." *Id.* at 143; *see also, e.g.*, *Vazques v. Garland*, No. 1:21-CV-00477 EAW, 2022 WL 2467655, at *2 (W.D.N.Y. July 6, 2022)

---

jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal. . . [but]. . . [t]he divestiture of jurisdiction rule is, however, not a per se rule . . . Its application is guided by concerns of efficiency and is not automatic." (citation modified)); *Linden Care, LLC v. Express Scripts, Inc.*, No. 1:15-CV-1335 (BKS/CFH), 2015 WL 12734164, at *2 n.3 (N.D.N.Y. Dec. 7, 2015) (party filed notice of appeal from text order "before the Court had issued the findings of facts and conclusions of law, which the Text Order, [], noted would be issued.  The appeal, therefore, does not divest the Court of jurisdiction to issue its findings of fact and conclusions of law.").

("[U]nreasonably prolonged immigration detention without appropriate procedural protections may constitute a due process violation.").

Prior to *Black*, this Court (and many district courts within the Second Circuit) applied "the multi-factor approach articulated by the court in *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *1 (S.D.N.Y. May 23, 2018) . . . for addressing procedural due process claims for aliens—like Petitioner—who are detained pursuant to § 1226(c)." *Vazquez*, 2022 WL 2467655, at *2. But in *Black*, the Second Circuit held that due process challenges to prolonged detention under § 1226(c) should be reviewed using "the three-factor balancing test established in *Mathews [v. Eldridge*, 424 U.S. 319 (1976)]." 103 F.4th at 147. The three *Mathews* factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Applying the *Mathews* factors, the Second Circuit concluded that the petitioners in *Black*, who had been detained pursuant to § 1226(c) without a bond hearing for seven months and 21 months, respectively, were entitled to "individualized bond hearings by an IJ." *Black*, 103 F.4th at 155. The Second Circuit further held that the burden was properly on the government to justify detention by clear and convincing evidence and that the IJ was required to consider the ability to pay and alternatives to detention when setting any bond amount. *Id.* at 155-58.

Here, Respondents concede that *Black* controls and that "applying that decision here would likely lead to a grant of the habeas petition." (Dkt. 7-3 at 9-10). But Respondents "preserve" their objection to *Black* and reserve all rights, including the right to appeal. (*Id.* at 10).

As Respondents note, this Court is bound by the Second Circuit holding in *Black* and there is no basis to depart from that holding. Applying the *Mathews* factors to Jules's detention, the Court concludes that, as ordered on April 6, 2026, Jules is entitled to a bond hearing. (Dkt. 10). As for the first factor, Jules's private interest "is the most significant liberty interest there is—the interest in being free from imprisonment," *Black*, 103 F.4th at 151 (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)), and Jules's current detention, now exceeding one year, is significant and weighs in favor of a due process remedy. In fact, the aggregate time Jules has been locked up in civil immigration detention is far longer than any criminal incarceration, and given the procedural history of this case and the lack of bond rights under § 1226(c), without this Court's intervention, Jules's detention will continue for a long time.

Consideration of the second factor also weighs in favor of an individualized bond hearing because of the limited options detainees under § 1226(c) are provided to contest the length of detention. *See Black*, 103 F. 4th at 152 ("Here, the almost nonexistent procedural protections in place for section 1226(c) detainees markedly increased the risk of an erroneous deprivation of Jules's private liberty interests."); *Peralta-Malla v. Mullin*, No. 26 CIV. 2903 (AT), 2026 WL 1346325, at *5 (S.D.N.Y. May 14, 2026) (same); *Joseph v. Arteta*, No. 26-CV-2979 (JGK), 2026 WL 1193489, at *6 (S.D.N.Y. Apr. 30, 2026)

(second *Mathews* factor favored petitioner detained under §1226(c) due to lack of any "procedural safeguards in place to determine whether his detention has become unreasonably prolonged" under that statute).  In addition, Jules alleges that during the over 16 months prior to his detention that he was on release, he complied with all DHS conditions, and his re-detention was not based on any evidence of danger, flight risk, or violation of those conditions.  (*See* Dkt. 9 at 1-2); *see Sosa v. Warden of Orange Cty. Corr.*, No. 26 CIV. 2304 (DEH), 2026 WL 1803814, at *6 (S.D.N.Y. June 23, 2026) (finding risk of erroneous deprivation of liberty where § 1226(c) statutory procedures were "virtually nonexistent" and petitioner "fully served his sentences for his misdemeanor convictions, and there is no assertion that he has engaged in any kind of unlawful conduct in the approximately eight years since those convictions"); *D.C. v. Noem*, No. 26 CIV. 1833 (PAE), 2026 WL 787895, at *9 (S.D.N.Y. Mar. 20, 2026) ("A bond hearing would permit D.C. to pursue these arguments for release.  The absence of such a hearing gives rise to a risk that his continued detention is unnecessary.").

As for the third factor, the Court acknowledges that the government's discretion to detain individuals under § 1226(c) "is valid where it advances a legitimate governmental purpose,' such as 'ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community," *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 495-96 (S.D.N.Y. 2025), but concludes that those interests are not unduly encumbered by granting a bond hearing here.  Indeed, during Jules's first period of confinement from 2019 through 2024, another district judge ordered two separate bond hearings for Jules, and

Respondents have not made any argument that this somehow unduly encumbered their interests. In fact, on both occasions, bond was denied.

## **CONCLUSION**

For the foregoing reasons, the petition is granted to the extent Jules seeks a bond hearing. Consistent with the provisions of the Court's Text Order entered on April 6, 2026, and pursuant to the *Mathews v. Eldridge* balancing test, at the bond hearing the government shall have the burden to demonstrate dangerousness or flight risk by clear and convincing evidence, and in deciding whether the government has met its burden of proof, the immigration judge must consider whether less-restrictive alternatives to detention can reasonably address the government's interest in Jules's continued detention. *See Cantor v. Freden*, 761 F. Supp. 3d 630, 640 (W.D.N.Y. 2025) ("This Court therefore holds that when a petitioner is entitled to a hearing because his detention pending removal has become unreasonably prolonged, the hearing requires a neutral decisionmaker to address whether alternatives to detention might ameliorate risk of danger as well as risk of flight.").

If the immigration judge finds that the government has not met its burden, then in setting any bond the immigration judge must consider Jules's ability to pay and alternative conditions of release.

SO ORDERED.

Dated:    June 26, 2026
          Rochester, New York

ELIZABETH A. WOLFORD
CHIEF JUDGE
UNITED STATES DISTRICT COURT